## (April 19, 1979)

■ In the Matter of KONSKI ENGINEERS, P. C., et al., Respondents, v ARTHUR LEVITT, as Comptroller of the State of New York, et al., Appellants, and ERDMAN, ANTHONY, ASSOCIATES, Respondent.—Appeal from that part of a judgment of the Supreme Court at Special Term, entered April 26, 1978 in Albany County, which, in a proceeding pursuant to CPLR article 78, held that the Comptroller's failure to approve Contract II was arbitrary and capricious and referred the matter to a Trial Term for an assessment of damages. In December of 1975, the Department of Environmental Conservation (En Con) requested bids from engineering firms in connection with the rehabilitation, improvement and related channel work on the Warner Dam in Jamestown, New York. The work was to be performed under three consecutive contracts, with the successful bidder on the initial contract having the right to negotiate the second and third contracts. Konski Engineers, P. C. (Konski) submitted a proposal which was selected on March 4, 1976. Although final execution of the first contract was not completed until June 23, 1976, Konski initiated work and completed a majority of it by that time. On February 25, 1977, En Con forwarded the second contract (Contract II) to Konski for its signature. En Con informed Konski that it would take approximately six weeks for the State to execute the contract. In April

of 1977, Konski was informed that Contract II had not been approved by the Comptroller. Throughout the latter part of April and May of 1977, the Comptroller continued to refuse to approve the contract and refused to offer any explanation therefor. Konski, nevertheless, continued to work during May and June of 1977, and by July 11, 1977, it had expended some $23,000 of its own funds on the project. On July 11, 1977, En Con informed Konski that the Comptroller would not approve Contract II and that, therefore, En Con intended to solicit proposals from other engineering firms. In October of 1977, En Con entered into an agreement with Erdman, Anthony, Associates (Erdman) to perform the work of Konski under Contract II. In October of 1977, Konski and its president, James L. Konski, P. E., simultaneously instituted two proceedings. The first was an action which sought a preliminary and permanent injunction enjoining the State from paying Erdman. The second was a CPLR article 78 proceeding which sought a judgment directing the Comptroller to approve Konski's Contract II. On November 16, 1977, Special Term denied motions to dismiss both the action and the CPLR article 78 proceeding. The court also denied Konski's motion for a preliminary injunction and mandamus. The parties took no appeal from that decision. The adverse parties in each proceeding thereafter answered, and Konski then moved for summary judgment in each proceeding. Special Term again denied the request for injunctive relief and granted summary judgment to the defendants. With respect to the CPLR article 78 proceeding, the court held that the Comptroller's failure to approve Contract II was arbitrary and capricious and it referred the matter to a Trial Term of the Supreme Court, Albany County, for an assessment of damages. It is this latter decision from which the State appeals. Subdivision 2 of section 112 of the State Finance Law provides that before any contract made by a State agency for over $1,000 is "executed" or becomes "effective", it must "first be approved by the comptroller and filed in his office." Preliminarily, we hold that where the Comptroller refuses to approve a contract pursuant to this provision, his decision is subject to judicial review to determine whether he exercised his discretion in an arbitrary or capricious fashion (CPLR 7803, subd 3). The State cannot be subject to contractual liability except in the manner prescribed by law. Section 112 plainly requires the Comptroller's approval of contracts executed by State agencies as a condition precedent to State liability (*Becker & Assoc. v State of New York,* 65 AD2d 65; *Blatt Bowling & Billiard Corp. v State of New York,* 14 AD2d 144, 146; *Westgate North v State Univ. of N. Y.,* 77 Misc 2d 611, affd 47 AD2d 1004). Konski alleges that although it was aware in early April, 1977 that the Comptroller's approval of Contract II had not been secured, it continued work under Contract II in response to a sense of urgency expressed by numerous officials of local agencies and En Con. However, it is settled law that officers of the State cannot waive provisions such as section 112 (*Belmar Contr. Co. v State of New York,* 233 NY 189; *Long Is. R. R. Co. v State of New York,* 185 Misc 646, 648). "We may not ignore the restrictions and limitations with which the legislature has chosen to surround the expenditure of public moneys. They are wise and should be enforced * * * Those dealing with it do so knowing this fact and at their own risk" (*Belmar Contr. Co. v State of New York, supra,* p 194). Here, Konski not only knew that the Comptroller refused to approve Contract II, but continued to work thereunder despite that persistent refusal. Konski alleges that it continued to work with En Con's acquiescence, but however inequitable the conduct of the State may be, it is responsible on a contract only if all conditions prescribed by law are satisfied (*Belmar Contr. Co. v State of New York, supra,* p 194). Since the

Comptroller has never approved Contract II, under section 112 of the State Finance Law the State is not liable thereon, unless the Comptroller acted arbitrarily or capriciously. Turning then to the next issue raised by this appeal, we hold that the Comptroller's refusal to approve Contract II was not arbitrary or capricious. The record reveals that on June 21, 1976 the Comptroller was served with a subpoena duces tecum to produce before the Grand Jury of New York County all the records and documents of Konski. On March 28, 1977 the Comptroller was requested to provide information to the Special State Prosecutor for Onondaga County who was investigating allegations of political corruption in the award of public contracts, and on April 7, 1977 the Prosecutor requested information with respect to Konski. On the following day, April 8, 1977, En Con submitted Contract II for the Comptroller's approval, and it was in view of this knowledge that the Comptroller refused to approve the contract. Arbitrary and capricious action is one taken "without sound basis in reason and * * * without regard to the facts" (Matter of Pell v Board of Educ., 34 NY2d 222, 231). In view of the knowledge that Konski was under Grand Jury investigation at the time Contract II was submitted to the Comptroller for his approval, we conclude that there was a rational basis for his refusal to approve the contract. Finally, we reject Konski's contention that the Comptroller's discretion under section 112 is limited to determining whether the contract is fair, reasonable, properly executed and there are appropriated funds for the payments required thereby. The statute contains no such limitations, and we find no reason for their imposition. In view of our holding, we do not reach the other issues raised by the parties. Judgment reversed, on the law and the facts, without costs, and petition dismissed. Mahoney, P. J., Greenblott, Staley, Jr., Mikoll and Herlihy, JJ., concur.